IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD BENOIT, III, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY,[1] )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-22-300-GLJ |

# OPINION AND ORDER

Claimant Richard Benoit requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was twenty-seven years old at the time of the administrative hearing. (Tr. 52). He attended the twelfth grade and earned his GED, but has no past relevant work. (Tr. 24, 52, 187). Claimant alleges that he has been unable to work since January 28, 2018, due to depression, panic attacks, high blood pressure, seizures, blindness in his left eye, and anxiety. (Tr. 186).

### Procedural History

On February 18, 2020, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Elizabeth McGee conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated January 26, 2022 (Tr. 15-25). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. At step two, she determined Claimant had the severe impairments of fractures of the nasal bones, ankle, lumbar spine, pubic rami, and left orbital and maxillary wall; right medial malleolus fracture; loss of vision in the left eye; traumatic brain injury; and anxiety disorder. (Tr.

17).  Additionally, she found he had the nonsevere impairments of mild disc bulges of the cervical spine, insomnia, and seizure disorder.  (Tr. 17).  At step three, she found he did not meet a Listing.  (Tr. 18-19).  At step four, she found that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could only occasionally stoop, kneel, crouch, and crawl and could have no exposure to moving mechanical parts coming from the left side.  Additionally, she found he was limited to work where interpersonal contact was incidental, tasks had to be no more complex than those learned and performed by rote with few variables and little judgment required, and supervision must be simple, direct, and concrete.  (Tr. 19).  The ALJ then concluded that although Claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform in the national economy, *e.g.*, paster and trimmer, addressing clerk, and nut sorter.  (Tr. 24-25).

## Review

Claimant contends that the ALJ erred by failing to properly account for his vision impairment, including in formulating his RFC *and* in identifying appropriate jobs at step five.  The Court agrees with Claimant that the ALJ erred in accounting for his severe vision impairment, and the decision of the Commissioner must therefore be reversed.

The relevant medical records as to Claimant's vision reflect that he lost the use of his left eye in on January 23, 2018 when he was a pedestrian victim of a hit and run.  (Tr. 380-381).  His myriad injuries at that time included left orbital wall fracture, bilateral nasal bone fractures, and left maxillary wall fracture.  (Tr. 380).  His facial fractures were repaired, and ophthalmology was consulted for continued care of the wounds.  (Tr. 384).

He was discharged February 20, 2018, and sent that day to an inpatient rehab facility for further treatment until March 10, 2018. (Tr. 1473). On February 17, 2020, Claimant reported headaches and visual changes in the left eye with about 20% vision in that eye. (Tr. 490).

On September 9, 2020, Dr. Reuben Thomas conducted a consultative examination of Claimant's vision. He noted an abnormal left optic nerve pallor, and found Claimant had little to no acuity or visual field in the left eye due to head trauma. (Tr. 323-325). He noted claimant had myopia and astigmatism of the right eye, and that Claimant's left eye had an orbital blowout fracture with subsequent optic nerve hypoplasia injury, myopia, and astigmatism. (Tr. 323). He recommended glasses to maximize Claimant's right-eye vision, but stated there was no operation or treatment to improve the vision in the left eye. (Tr. 323).

State reviewing physicians determined initially and upon reconsideration that there was insufficient medical evidence to make a determination as to his physical impairments. (Tr. 64-66, 76-78). However, both noted that Claimant is not statutorily blind. *Id.*

At the administrative hearing, Claimant's representative noted Claimant could see some colors and limited movement out of his left eye, but that it was functionally "very bad." (Tr. 37). Claimant echoed this when he testified that his eye could "catch movement and the shades of light," but no details. (Tr. 51). At the administrative hearing, the ALJ elicited testimony from a vocational expert "VE" to determine if there were jobs a hypothetical person could perform with the following physical limitations: "I'm going to have a sedentary exertional level. I'm going to have occasional on stoop, kneel, crouch,

and crawl. And because of the loss of vision on the left side, I'm going to have no moving mechanical parts, so nothing coming from that left side. So no moving mechanical parts." (Tr. 57). The ALJ included a few more mental limitations, and the VE then testified that someone with the same age, education, and experience as Claimant could perform the jobs of paster and trimmer, DICOT § 249.587-014; addressing clerk, DICOT § 209.587-010; and nut sorter, DICOT § 521.687-086.

In her written opinion at step four, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record, including the records from his January 2018 injury and recovery. As relevant here, she noted Claimant reported loss of vision in the left eye. (Tr. 20). She summarized Dr. Thomas's findings (Tr. 21-22), and noted the state reviewing physicians' findings that he was not statutorily blind (Tr. 23). She then stated that Claimant's limitation of exposure to moving mechanical parts from the left side was based on his loss of vision in the left eye. (Tr. 23). The ALJ ultimately concluded that Claimant was not disabled. (Tr. 23-25).

Claimant contends the ALJ failed to properly account for his left-eye vision loss in formulating his RFC, and that she failed to properly assess Dr. Thomas's opinion as part of this error. Additionally, he asserts that this error is not harmless because all three jobs identified at step five require frequent or constant near acuity and one also requires occasional color vision. The Court agrees.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996

WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). Here, the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts the claimant's severe impairment of loss of vision in the left eye. (Tr. 17). While it is true that the ALJ created a limitation supposedly related to Claimant's left-eye vision loss, there is no evidence in the record that this limitation accounts for the impairment other than the ALJ's bald assertion that it does. In other words, there is no evidence that limited movement on the left side from moving mechanical parts will also account for a near total lack of acuity in the left eye. This is error because the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (quoting *Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1523)); *see also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the

omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Moreover, the ALJ was not permitted to reject or ignore every related opinion in the record, then insert an arbitrary limitation in order to overcome this duty.  Because the ALJ failed to explain how the RFC accounts for this severe impairment, much less the RFC as a whole, the RFC does not wholly account for his impairments.

Claimant additionally contends that the ALJ failed to properly consider Dr. Thomas's opinion for its persuasiveness.  For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors.  *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The factors are:  (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c),

416.920c(c).  Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Government contends that Dr. Thomas's exam notes and report does not constitute a "medical opinion" requiring this analysis, because he "technically" did not issue an opinion about what Plaintiff could do, or what limitations he had in the ability to perform work.  "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . Your ability to perform other demands of work, such as seeing, hearing, or using other senses[.]"  20 C.F.R. § 404.1513.  However, "when a doctor does not provide a medical opinion regarding a claimant's work-related functional abilities, the ALJ is not required to discuss such evidence in formulating the claimant's RFC."  *Warren E. H. v. Kijakazi*, 2023 WL 7385776, at *2 (E.D. Okla. Nov. 8, 2023).  Here, Dr. Thomas made significant clinical findings as to Claimant's loss of vision in one eye, but he did not opine on the degree of any functional limitations or suggest coterminous limitations.  Accordingly, the regulations do not require the ALJ to further evaluate Dr. Thomas's findings pursuant to the 20 C.F.R. § 420.920c(c) factors.  However,

as discussed above, the ALJ was nevertheless still required to account for this severe impairment by sufficiently linking medical evidence to the RFC through a narrative discussion.  The absence of such remains error.

Claimant further contends that the error in properly formulating an RFC caused a reversible error at step five given the jobs identified by the ALJ.  The Court agrees.  At the administrative hearing, the VE identified the jobs of paster and trimmer, DICOT § 249.587-014; addressing clerk, DICOT § 209.587-010; and nut sorter, DICOT § 521.687-086.  The job of paster and trimmer requires frequent near acuity and occasional color vision, although accommodation, far acuity, and field of vision are not present.  *See* DICOT § 249.587-014.  The job of addressing clerk requires constant near acuity, although the other visual requirements are not present. *See* DICOT § 209.587-010.  The job of nut sorter requires frequent near acuity, although the other visual requirements are not present. *See* DICOT § 521.687-086.  None of the job requirements state that vision is only required in one eye and the ALJ's hypothetical made no mention of the claimant's loss of vision in the left eye or color vision, only the limitation regarding moving mechanical parts on the left-hand side.  The jobs identified thus do not account for *all* of Claimant's limitations.

Here, the VE's testimony *did not* explain how the elimination of vision in one eye could impact his testimony; the ALJ did not ask about such an effect and only discussed the claimant's loss of vision in the left eye at all to say that the limitation of "no moving mechanical parts, so nothing coming from the left side" was "because of the loss of vision on the left side." (Tr. 56-59).  This was error.  *See Harless v. Saul*, 2020 WL 1330436, at *4 (W.D. Okla. March 23, 2020) ("Rather, the VE relied upon the DOT's job descriptions

but offered no explanation as to how the significant modification of eliminating Plaintiff's ability to see on one side impacted her testimony or would affect Plaintiff's ability to fulfill the visual abilities required for the cited occupations."); *see also Cloud v. Astrue*, 2011 WL 4478651, at *3 (E.D. Okla. Aug. 29, 2011) (finding jobs requiring frequent use of visual acuity and/or depth perception should be eliminated for a claimant who is legally blind in one eye); *James v. Colvin*, 2013 WL 4077865, at *3 (W.D. Okla. Aug. 12, 2013) ("Common sense dictates that having extremely low vision in one eye would necessarily impose some limitations in addition to the physical limitations described in the RFC. The Tenth Circuit Court of Appeals has held that the failure to consider loss of sight in one eye at step four of the sequential evaluation is reversible error.") (citing *Washington v. Shalala,* 37 F.3d 1437, 1440 (10th Cir. 1994) ("We note at the outset that the ALJ failed to consider plaintiff's vision loss in conducting the step four inquiry about the ability to perform past relevant work. This failure, alone, would be grounds for reversal")). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999); *see also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir.

2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

Although the unresolved conflict as to the claimant's visual limitations may not have been harmless error if the ALJ had identified in her opinion other jobs that did not pose a conflict, it is not harmless here because the three jobs identified all had visual requirements conflicting with the evidence in the record pertaining to the claimant's visual impairments. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

-13-

**DATED** this 6th day of March, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**